

# United States District Court
### EASTERN DISTRICT OF TEXAS
### PARIS DIVISION

| | | |
|---|---|---|
| VICKEY CURLL | § | |
| | § | |
| V. | § | CASE NO. 4:05cv43 |
| | § | (Judge Schneider/Judge Bush) |
| Commissioner of Social | § | |
| Security Administration | § | |

## REPORT AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

The Plaintiff brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner denying her claim for Disability Insurance Benefits Supplemental Security Income.  After carefully reviewing the briefs submitted by the parties, as well as the evidence contained in the administrative record, the Court finds that the Commissioner's decision should be affirmed.

## HISTORY OF THE CASE

Plaintiff filed for disability insurance benefits and supplemental security income on June 7, 2005, claiming inability to work since April 1, 1999 due to reflex sympathetic dystrophy, musculoskeletal disorders, and depression.  The application was denied initially and upon reconsideration.  Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ").  After holding a hearing on February 4, 2002.  The hearing was suspended so that Plaintiff could see a consultative physician, and on August 15, 2002 a supplemental administrative hearing was conducted.  On August 22, 2002 the ALJ issued a decision finding Plaintiff not disabled.

1

Plaintiff subsequently requested that the Appeals Council conduct a review.  The Appeals Council found that no basis existed for review of the ALJ's decision and denied Plaintiff's request.   Therefore, the ALJ's determination became the final decision of the Commissioner.  Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF THE FACTS

When Plaintiff's insured status expired, she was thirty-seven years old with a ninth grade education.   According to the ALJ, Plaintiff presented the following history:

[Plaintiff] described her pain in September, 1999 as 2/10 or mild pain (Exhibit F/42).

The MRI on October 1, 1999 showed no evidence of disc bulge or herniation at all cervical disc levels.  (Exhibit F/43).

The neurological consultation on March 14, 2000 indicated she had mild left carpal tunnel syndrome and left shoulder sprain, rul[ing] out [a] tear. (Exhibit F/62).  The pain management program reported on December 5, 2000 that she had had mild improvement (Exhibit F/160).

The report on June 13, 2001 indicated she had four stellate blocks on the left, and each block has offered her significant pain improvement. (Exhibit F/203).  Neil Altin, D.O. reported in September, 2001[that] he implanted a spinal cord stimulating device, looking for more than 70% pain relief.  She was diagnosed with complex regional pain syndrome, type I, reflex sympathetic dystrophy of the upper extremities.  (Exhibit F/203-204).

The medical reports in 2002 indicated she continued to have pain in the left arm and generalized pain in the leg and other arm and decreased range of motion of the left shoulder.  Her medication was reported to be relieving the pain up to 50%.  The report on January 7, 2002 indicated she had pain at a 5/10 and was using the TENS unit 2-3 hours a day. (Exhibit F/190).

Gerald Stephenson, Ph.D. reported on May 16, 2002 that her gait and bearing appeared to be balanced, and she had fair to fine motor coordination.  She had not been hospitalized for mental disorders.  She said she bathes and dresses herself,

but she performs no household chores.  She demonstrated adequate attention and short-term memory.  She focused attention to follow three-step instructions, an she performed serial threes.   Her IQ scores (WAIS-III) showed a Verbal IQ of 74, Performance IQ of 83, and a Full Scale IQ of 76.  She was diagnosed with Depressive disorder, NOS, in reaction to pain, with a Global Assessment Functioning (GAF) of 63. Her affective disorder appears to be attached to her physical condition.  She was reported to have good ability to perform simple and detailed by not complex job instructions. (Exhibit 10F).  On June 19, 2002, she was reported to be taking Prozac for depression, which was reported to be secondary to her reflex sympathetic dystrophy and chronic pain. (Exhibit 11F).

> The claimant testified that she has side effects from her medication, including drowsiness.  She said she lives with her parents.  She reported she eats breakfast, watches television, talks to her mother, and goes back to sleep for most of the day.  She alleged she does not go out for walks, but she said she walks around her parents' home because of the heat.   She related she can take care of her personal hygiene.  she reported she has had physical therapy, but she stated she cannot raise her arms over her head.  She stated she can sit for thirty minutes and can stand for thirty minutes.  She said she does no household chores and never reads.  She stated her father carries her to the doctor; she does not drive.  She said her grip is not good, and she can only lift one to five pounds.  She stated she goes to the doctor twice a month.

> The claimant's mother testified she takes care of the claimant, including feeding, bathing, and dressing her, sometimes.  The father testified that the claimant's mother is on dialysis, and his daughter sleeps a lot.

(TR 13-15).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

After considering the record, the ALJ made the prescribed sequential evaluation.

The ALJ made the following findings:

1. The claimant meets the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through [August 22, 2002].

2. The claimant has not engaged in substantial gainful activity since

the alleged onset of disability.

3.      The claimant has an impairment or a combination of impairments considered "severe" based on the requirements of the Regulations 20 CFR §§ 404.1520(b) and 416.920(b).

4.      These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.      The [ALJ] finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6.      The [ALJ] has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR §§ 404.1527 and 416.927).

7.      The claimant has the following residual functional capacity: light work activity.  The claimant can stand/walk for two or more hours a day.

8.      The claimant's past relevant work as a cashier, cleaning person, and assembly worker did not require the performance of work-related activities precluded by her residual functional capacity. (20 CFR §§ 404.1565 and 416.965).

9.      The claimant's medically determinable musculoskeletal disorders and reflex sympathetic dystrophy do not prevent the claimant from performing her past relevant work.

10.     The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of the decision (20 CFR §§404.1520(e) and 416.920(e)).

(TR 17-18)

## STANDARD OF REVIEW

In an appeal under § 405(g), this Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings, *Dellolio v. Heckler*, 705 F.2d 123 (5th Cir. 1983),

and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Smith v. Schweiker*, 646 F.2d 1075 (5th Cir. 1981); *see* 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). This Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner, *Chaney v. Califano*, 588 F.2d 958, 959, (5th Cir. 1979), and conflicts in the evidence are resolved by the Commissioner. *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

To establish disability, Plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382(a)(3).

## SEQUENTIAL EVALUATION PROCESS

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520 (1987). First, a claimant who at the time of his disability claim is engaged in substantial gainful employment is not disabled. 20 C.F.R. § 404.1520(b) (1987). Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience. 20 C.F.R. § 404.1520(c) (1987). Third, if the alleged impairment is severe, the claimant is

considered disabled if his impairment corresponds to an impairment described in 20 C.F.R., Subpart P, Appendix 1 (1987).  20 C.F.R. § 404.1520(d) (1987).  Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he is capable of performing his past work.  20 C.F.R. § 404.1520(e) (1987).  Finally, a claimant who cannot return to his past work is not disabled if he has the residual functional capacity to engage in work available in the national economy.  20 C.F.R. § 404.1529(f) (1987); 42 U.S.C. § 1382(a).  In this case, the determination that Plaintiff was not disabled was made at the Fifth Step.

## ANALYSIS

The medical records from Plaintiff's treating physicians support the ALJ's assessment that Plaintiff can perform light work.  The ALJ's assessment of Plaintiff's RFC is consistent with Dr. Wolski's medical reports.  The medical records regarding Plaintiff's left shoulder and left arm pain show that in September 1999, five months after her alleged onset date, Plaintiff told Edward Wolski, M.D., a treating physician, that her left arm and left shoulder pain level was mild.  On September 21, 1999, Dr. Wolski noted that Plaintiff was doing "extremely well" with Paraffin baths, and that her left arm and shoulder pains were relieved by 80 percent by using a Transcutaneous Electrical Nerve Stimulation (TENS) unit.  From November 1999 through March 2000, Plaintiff complained to Dr. Wolski of increased left arm pain that was moderate in nature.  In April 2001, Dr. Wolski noted that a stellate ganglion block relieved Plaintiff's pain almost completely, and he recommended continuance of the stellate ganglion blocks.  In July and October 2001, Dr. Wolski noted that Plaintiff continued

to have pain in her left arm, and that her injury had progressed to reflex sympathetic dystrophy.  From April 2001 through January 2002, Plaintiff reported that her level of pain was moderate.  From February through May 2002, Plaintiff reported having hypersensitivity of the left arm, left shoulder, and left cervical area, and that she had decreased range of motion of the cervical spine and left shoulder.

In June and August 2000, Plaintiff underwent a left stellate ganglion blockade, performed by Neil J. Atlin, D.O., a pain management specialist, for treatment of reflex sympathetic dystrophy of the left arm and hand.  In April 2001, Dr. Atlin noted that the stellate blocks provided Plaintiff with significant relief, although for a short time only, and he performed a third through fifth stellate block on the left side of Plaintiff. In May 2001, Dr. Atlin noted that Plaintiff "[wa]s pleased to report that after three stellate blocks, overall she has more than 70 percent improvement of her left arm and hand pain, swelling, and sensitivity to touch.  On examination, Plaintiff showed greater range of motion in her arm and hand and also showed less swelling; and Plaintiff stated that her left upper extremity symptoms were significantly improved and requested that similar treatment be given for her right upper extremity.

In March 2000, Plaintiff underwent a neurological consultation, performed by Usha Walia, M.D., a neurologist.  Upon examination, Dr. Walia's impression was that Plaintiff had mild carpal tunnel syndrome and a left shoulder sprain, and she recommended Plaintiff continue care with her treating physician.  In November 2001, Dr. Wolski noted that Plaintiff had mild carpal tunnel syndrome.  Further, during the administrative hearing, Plaintiff did not complain that her hands placed any functional

limitations.  In fact, when asked why she could not work, Plaintiff testified that her main problem is pain and medicines' side effects.

The results of diagnostic examinations support the ALJ's assessment that Plaintiff can perform light work.  In July 1999, Plaintiff underwent a neuro-selective Current Perception Threshold analysis at the Back and Neck Pain Center.  The CPT Summary Reports stated that the exam essentially showed no abnormal measures and only mild sensory dysfunction.

Plaintiff also underwent a Cervical Magnetic Resonance Imaging (MRI) examination in October 1999.  Hung B. Nguyen, M.D., a radiologist, documented that the MRI results showed that Plaintiff did not have a disc bulge or herniation at all cervical disc levels.

A Residual Functional Capacity Assessment completed by a State Agency physician also supports the ALJ's finding of Plaintiff's RFC.  The record  shows that in October 2000, a State Agency physician, George W. Bounds, M.D., issued an RFC opinion based on a review of the medical records.  Based on the evidence available at the time of the evaluation, Dr. Bounds opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; that she could stand, walk, or sit for about 6 hours in an 8-hour workday; and that her ability to push and pull was unlimited, other than as found for lifting and carrying.  Dr. Bounds did not find that Plaintiff had any other limitations, other than she was limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling; and was limited with her left hand in reaching, handling, and fingering.

8

Social Security Regulations (SSR) and rulings discuss the reliance that should be placed on State medical physicians' opinions.  SSR 96-6p discusses the role that State medical consultants play in the disability evaluation process.  "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act."  Id.  The consultants "consider the medical evidence in disability cases and make findings of fact on the medical issues, including, but not limited to, the existence and severity of an individual's impairment(s), [and] the existence and severity of an individual's symptoms . . ."  Id.  Since they are considered experts in the Social Security disability programs, the regulations require the ALJ to consider their findings of fact about the nature and severity of an individual's impairments as opinions of non-examining physicians and psychologists.  See 20 C.F.R. §§ 404.1512(b)(6), 404.1527(f), 416.912(b)(6), 416.927(f).

The ALJ's decision shows that he properly considered all the medical records from Plaintiff's treating and consultative physicians.  Plaintiff's physicians diagnosed Plaintiff with reflex sympathetic dystrophy, musculoskeletal disorders, which the ALJ incorporated in his findings.  Further, the ALJ is not required to specifically explain each piece of evidence that he accepts or rejects.  Falco v. Shalala, 27 F.3d 160, 163 (5th Cir. 1994).  Not all pain is severe enough to create a disabling condition.  Hollis v. Bowen, 837 F.2d 1378, 1384 (5th Cir. 1988).  An individual's own statements regarding pain and symptoms are not determinative of disability status.  See 20 C.F.R. §§ 404.1528(a), 404.1529, 416.928(a) & 416.929.  During the administrative

hearing, Plaintiff testified that she has severe pain due to her impairments.  Consistent with her testimony, the ALJ found that Plaintiff had significant functional limitations. Leggett v. Chater, 67 F.3d 558, 565 n.12 (5th Cir. 1995) (daily activities properly considered).  The ALJ did not credit Plaintiff's complaints to the extent that Plaintiff wished.  Carrier, 944 F.2d at 245.

The ALJ properly discounted Plaintiff's credibility and assessed her RFC based on the credible evidence.  First, the ALJ noted that Plaintiff's treating physicians repeatedly noted that Plaintiff described her pain as mild to moderate, and that medication relieved her pain by as much as 50 percent.  It is within the discretion of the ALJ to determine the debilitating nature of pain, and these determinations are entitled to considerable deference.  Jones v. Bowen, 829 F.2d 524, 527 (5th Cir. 1987).  Second, the ALJ noted that during the administrative hearing, Plaintiff was "able to lift both upper extremities to take off and put on her eyeglasses back up without difficulty or expression of pain;" that "she sat throughout the hearing, which lasted fifty-five minutes, and never stood or stirred;" that she stood from a sitting position without any observable difficulty or special effort and courteously pushed her chair back in place;" and that she walked without assistance, and her stride was swift and effortless."   The ALJ found that Plaintiff's appearances and actions are inconsistent with even the chronic, moderate pain she has described to her doctors since the date of her application and are more consistent with the milder pain described prior to the date of her application and her alleged onset date."

The ALJ specifically noted in his decision that Plaintiff complained of drowsiness

and alleged sleeping most of the day and not being able to perform any household chores due to her medications' side effects.  However, the ALJ discounted Plaintiff's allegations of disabling side effects by noting that Plaintiff "has no need to perform household tasks, when her mother does everything for her."  The ALJ also noted that Plaintiff is able to feed her grandbaby, to walk for exercise, and take care of her personal hygiene, which are activities inconsistent with her allegations of disabling pain and disabling side effects from medications.  "The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ, who has had an opportunity to observe whether the person seems to be disabled."  Loya v. Heckler, 707 F.2d 211, 215 (5th Cir. 1983)(citing Laffoon v. Califano, 558 F.2d 253, 255 (5th Cir. 1977)).  "[A] fact finder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence."  Villa v. Sullivan, 895 F.2d 1019, 1024 (5th Cir. 1990).

Plaintiff incorrectly asserts that the ALJ erred by not adjusting her RFC for endurance to "capture only what [she] can 'sustain' at work, all day long."  In Myers v. Apfel, 238 F.3d 617, 620 (5th Cir. 2001), the Fifth Circuit cited SSR 96-8p for the proposition that residual functional capacity "is an assessment of an individual's ability to do sustained work-related physical and mental activities on a regular and continuing basis."  A regular and continuing basis means "8 hours a day, for 5 days a week, or an equivalent work schedule."   SSR 96-8p; SSR 85-16, "Titles II and XVI: Residual Functional Capacity for Mental Impairments."  By definition, the residual functional capacity assessment is a finding that a claimant can sustain work activity on a regular

11

and continuing basis.   See Myers, 238 F.3d at 620; 20 C.F.R. §§ 404.1545, 416.945; SSR 96-8p; SSR 86-8.  There is no indication that the ALJ used the term "residual functional capacity" in a manner other than as it is defined in the regulations and rulings that indicate that residual functional capacity is an assessment of an individual's ability to do sustained work activity on a regular and continuing basis.

After assessing Plaintiff's residual functional capacity, the ALJ found that Plaintiff had past relevant work as a cashier, cleaning worker, and assembly worker. Although Plaintiff alleges that she did not work long enough as a cashier for it to qualify as past relevant work, her disability application shows that she worked as a cashier for over six months, from September 1999 through March 2000 and appeared to have been fired from her job as a cashier for eating chips at her work station (TR 112).[1]

The ALJ finding that Plaintiff's past relevant work did not require the performance of work-related activities precluded by her residual functional capacity is supported by substantial evidence.  The Dictionary of Occupational Titles indicates that Plaintiff's past relevant work as a cashier II is performed at the sedentary level of exertion and the cashier-checker is performed at the light level of exertion, which is consistent with Plaintiff's RFC.  See Dictionary of Occupational Titles, 211.462-010, 211.462-014 (4th ed., rev. 1991).  An individual will be found "not disabled" when it is determined that he or she retains the residual functional capacity to perform the actual functional demands and job duties of a particular past relevant job, or the

---

[1] Plaintiff contends that the real reason for her firing was that she could not do the job required by her employer.

12

functional demands and job duties of the occupation as generally required by employers throughout the national economy.  See 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2).  Here, the ALJ finding that Plaintiff's past relevant work did not require the performance of work-related activities precluded by her residual functional capacity is consistent with the requirements listed in the Dictionary of Occupational Titles.

Plaintiff also alleges that the ALJ committed error because she was found to have past relevant work as a cashier, when the evidence showed that she did not work as a cashier in a full-time capacity.  However, past relevant work includes any "work experience [which]…was done within the last 15 years, lasted long enough for [the claimant] to learn to do it, and was substantial gainful activity."  20 C.F.R. §§ 404.1565(a), 416.965(a).  "Work may be substantial even if it is done on a part-time basis," and "work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized."  20 C.F.R. §§ 404.1572(a)-(b), 416.972(a)-(b).  Thus, Plaintiff's argument is without merit.

The final responsibility for the determination of an individual's residual functional capacity, and the ultimate question of whether an individual is "disabled" under the Act are issues reserved to the Commissioner pursuant to SSR 96-5p and 20 C.F.R. §§ 404.1527, 416.927.  Tamez v. Sullivan, 888 F.2d 334, 336 n.1 (5th Cir. 1989).  The ALJ's residual functional capacity assessment is consistent with the evidence of record and constitutes an appropriate resolution of any conflicts in the evidence.  Richardson, 402 U.S. at 399; Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir. 1987) (it is the task of the ALJ to resolve conflicts in the evidence).

13

**The ALJ Satisfied His Duty To Fully And Fairly Develop The Record.**

Plaintiff alleges that remand is warranted because the ALJ did not call a vocational expert to provide evidence regarding the requirement of her past relevant work. Plaintiff alleges that the ALJ's lack of analysis regarding the requirements of her past relevant work are similar to the facts in <u>Latham v. Shalala</u>, 36 F.3d 482 (5th Cir. 1994). Unlike <u>Latham</u>, the ALJ found that Plaintiff did not have severe mental impairments. Therefore, Plaintiff's reliance on <u>Latham</u> is misplaced. The ALJ owes a duty to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts. <u>Brock v. Chater</u>, 84 F.3d 726, 729 (5th Cir. 1996). The Court will not reverse the decision of the ALJ for lack of substantial evidence where the claimant makes no showing that she was prejudiced by the deficiencies alleged. <u>Brock</u>, 84 F.3d at 729. To establish prejudice, Plaintiff must show that, had the ALJ done his duty, the ALJ "could and would have adduced evidence that might have altered the result." <u>Id.</u> at 728 (citing <u>Kane</u>, 731 F.2d at 1220). However, Plaintiff has failed to show that if the ALJ had sought testimony from a vocational expert, evidence would have been produced that might have altered the ALJ's decision.

## RECOMMENDATION

Pursuant to the foregoing, it is RECOMMENDED that the decision of the Administrative Law Judge should be AFFIRMED.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days shall bar an aggrieved party from attacking the

factual findings on appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 (1985); *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. 1982) *en banc*.

**SIGNED this 14th day of November, 2005.**


_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE